# Nos. 13-1374 and 13-1391

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

TAB BONIDY, *et al.*,
Plaintiffs-Appellees/Cross-Appellants,

v.

UNITED STATES POSTAL SERVICE, *et al.*,
Defendants-Appellants/Cross-Appellees.

On Appeal from the United States District Court for the District of Colorado
No. 10-cv-02408-RPM, The Honorable Richard P. Matsch

**PLAINTIFFS-APPELLEES/CROSS-APPELLANTS' MOTION TO STAY THE MANDATE PENDING THE FILING AND DISPOSITION OF A PETITION FOR WRIT OF CERTIORARI**

Pursuant to Rule 41(d)(2) of the Federal Rules of Appellate Procedure, Plaintiffs-Appellees/Cross-Appellants, Tab Bonidy and the National Association for Gun Rights, respectfully request that this Court stay the mandate pending the filing and disposition of a petition for writ of certiorari. The mandate is scheduled to issue on September 16, 2015. Bonidy and the National Association for Gun Rights request a 90-day stay with a continuance once they notify the Clerk of this Court that the petition for writ of certiorari has been filed. Fed. R. App. P.

41(d)(2)(B). The undersigned has conferred with counsel for Defendants-Appellants/Cross-Appellees, who oppose the granting of this Motion.

## BACKGROUND

In *District of Columbia v. Heller*, 554 U.S. 570, 579–595 (2008), the Supreme Court ruled that the Second Amendment codifies an individual's fundamental right to keep and bear arms for the core purpose of self-defense. *See McDonald v. Chicago*, 561 U.S. 742, 767 (2010) ("Self-defense is a basic right" and "'the *central component*'" of the Second Amendment's guarantee of an individual's right to keep and bear arms. (quoting *Heller*, 554 U.S. at 599 (emphasis in original))). In so doing, the Court also stated that "longstanding prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding *the carrying of firearms in sensitive places such as schools and government buildings*," and "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful" regulatory restrictions. *Heller*, 554 U.S. 626–27 and n.26 (emphasis added).

Bonidy is a law-abiding, responsible citizen who has been issued a permit to carry a concealed handgun in the State of Colorado, and regularly carries a handgun for self-defense. *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1123 (10th Cir. 2015). Bonidy lives in a rural area near Avon, Colorado. *Id*. The Avon Post Office does not provide home mail delivery; instead, it provides post office boxes

to local residents free of charge. *Id*. These post office boxes are in an area of the Avon Post Office that is open to the public at all times. *Id*. Adjacent to the Avon Post Office building is an unsecured, customer parking lot. *Id*. A pre-*Heller* United States Postal Service ("USPS") regulation, 39 C.F.R. § 232.1(*l*), however, prohibits Bonidy from safely storing his handgun inside his truck parked in the Avon Post Office customer parking lot while he picks up his mail. *Id*. at 1122–23. Thus, in order to receive communications by mail, Bonidy must relinquish his Second Amendment right to carry a handgun for self-defense and drive "approximately 10 miles roundtrip" to the Avon Post Office unarmed. *See* Appendix ("App.") 17, 917.

Because of this burden on Bonidy's Second Amendment right, the District Court held that 39 C.F.R. § 232.1(*l*) is unconstitutional to the extent it prohibits Bonidy from safely storing his handgun in his truck while he picks up his mail. App. at 920–25. Based upon this holding, the District Court ordered the USPS to "take such action as is necessary to permit [Bonidy] to use the public parking lot adjacent to the Avon Post Office Building with a firearm authorized by his Concealed Carry Permit secured in his car in a reasonably prescribed manner ...."). App. at 925.

In a 2-1 decision, the panel reversed this aspect of the District Court's judgment. *Bonidy*, 790 F.3d at 1124–29.[1] Focusing on *Heller*'s statement that "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" are "presumptively lawful," the majority first ruled that the Second Amendment does not apply in "federal buildings, such as post offices." *Id*. at 1124–25. The majority then concluded "that the parking lot should be considered as a single unit with the postal building itself" because the parking lot facilitates use of the building and has drop-off boxes for outgoing mail. *Id*. at 1125. Based upon this conclusion, the majority deemed the parking lot a "sensitive place" where, under its reading of *Heller,* the Second Amendment did not apply. *Id*. In the alternative, and assuming that the right to keep and bear arms applies outside the home, the majority ruled that 39 C.F.R. § 232.1(*l*)'s prohibition on Bonidy safely storing his handgun in his truck while he picks up his mail is constitutional under a form of intermediate scrutiny. *Id*. at 1125–29.

Judge Tymkovich disagreed with the majority's rulings regarding the parking lot. *Bonidy*, 790 F.3d at 1129–41 (Tymkovich, J., dissenting). He stated that he would hold—as opposed to assume—that the Second Amendment applies outside the home. *Id*. at 1129–32. He also acknowledged that this is an as-applied challenge, where the "particular circumstances of the case" matter. *Id*. at 1132

---

[1] The panel also affirmed the District Court's ruling that 39 C.F.R. § 232.1(*l*)'s ban on carrying firearms into the Avon Post Office was constitutional. *Id*. at 1125.

(quotation omitted). He further noted that under this Court's precedent, the relevant facts are "the restraints" the challenged law "places on *who* may carry a firearm and *where* he may carry it." *Id*. at 1133 (emphasis in original). Judge Tymkovich explained that 39 C.F.R. § 232.1(*l*)'s prohibition did not survive intermediate scrutiny because the USPS failed to prove that the prohibition was substantially related to the USPS's asserted public safety interest. *Id*. at 1132–41. Specifically, he recognized that the subcategory of law-abiding, responsible citizens represented by Bonidy, by definition, do not pose any public safety risks. *Id*. at 1133, 1137–38. He also noted that the USPS had failed to prove that the Avon Post Office parking lot posed any "unique" public safety concerns. *Id*. at 1137–1138, 1140. Thus, Judge Tymkovich concluded that, as applied, 39 C.F.R. § 232.1(*l*)'s prohibition did not survive intermediate scrutiny because it "restricts far more [Second Amendment] conduct than is necessary to protect the asserted government interest." *Id*. at 1129; *see id*. at 1137–41.

On August 24, 2015, Bonidy and the National Association for Gun Rights timely filed a Petition for Rehearing En Banc and/or Panel Rehearing ("Petition for Rehearing") because this case raises questions of exceptional importance. For example, the majority's opinion raises a question of exceptional importance regarding *Heller*'s list of "presumptively lawful" restrictions. Under the majority's opinion, *Heller*'s "presumptively lawful" restrictions do not burden conduct

5

protected by the Second Amendment. *Bonidy*, 790 F.3d at 1124–25. Yet, this ruling is in conflict with a majority of the other circuits. Petition for Rehearing at 5–8.

This case also raises a question of exceptional importance regarding how restrictions on the fundamental right to keep and bear arms should be reviewed. Based upon the majority and dissenting opinions in the instant case, it appears that all restrictions on the fundamental right to keep and bear arms will be reviewed under intermediate scrutiny in this circuit. *Bonidy*, 790 F.3d at 1126; *id*. at 1132 (Tymkovich, J., dissenting). Yet, the Supreme Court generally applies strict scrutiny to infringements on fundamental rights. Petition for Rehearing at 9. This is especially true when a person is forced to relinquish one fundamental right in order to exercise another, as Bonidy must do in the instant case. *Id*. at 10.

On September 9, 2015, this Court denied both panel rehearing[2] and rehearing en banc. Because this case raises substantial constitutional questions that merit Supreme Court review, Bonidy and the National Association for Gun Rights intend to file a petition for writ of certiorari within the time allowed by Supreme Court Rule 13.

---

[2] Judge Tymkovich voted to grant panel rehearing.

## REASONS FOR STAYING THE MANDATE

A mandate may be stayed pending the filing of a petition for writ of certiorari when "the certiorari petition would present a substantial question and … there is good cause for a stay."  Fed. R. App. P. 41(d)(2)(A); *see* 10th Cir. R. 41.1(B) (staying the mandate is appropriate where "there is a substantial possibility that a petition for writ of certiorari would be granted").  The contemplated petition for writ of certiorari will present substantial constitutional questions that merit Supreme Court review.  There is also good cause to stay the mandate because Bonidy will suffer irreparable harm if the mandate issues.  Accordingly, this Court should stay the mandate pending the filing and disposition of the contemplated petition for a writ of certiorari.

**I.     THE PETITION FOR WRIT OF CERTIORARI WILL PRESENT SUBSTANTIAL CONSTITUTIONAL QUESTIONS MERITING SUPREME COURT REVIEW.**

In holding that the Second Amendment codified a fundamental right to keep and bear arms, the Court in *Heller* also stated that "longstanding prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding *the carrying of firearms in sensitive places such as schools and government buildings*," and "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful" restrictions.  554 U.S. 626–27 and n.26 (emphasis added).  In the instant case, the majority ruled that these "presumptively lawful"

7

restrictions do not burden conduct protected by the Second Amendment. *Bonidy*, 790 F.3d at 1124–25; *but see, id*. at 1136 n.7 (Tymkovich, J., dissenting) (suggesting that the majority "overread[]" *Heller*'s statement regarding "presumptively lawful" restrictions, and that a better reading is that the listed restrictions do, indeed, burden conduct protected by the Second Amendment and can be successfully challenged in an appropriate, as-applied case); *see also U.S. v. McCane*, 573 F.3d 1037, 1049 (10th Cir. 2009) (Tymkovich, J., concurring) (noting that it "is unclear" why the Court listed the "presumptively lawful" restrictions in *Heller*). The majority then ruled that the parking lot should be considered as a "single unit with the postal building itself" because the parking lot facilitates use of the building and has drop-off boxes for outgoing mail. *Bonidy*, 790 F.3d at 1125; *but see*, *U.S. v. Rodriguez*, 460 F. Supp. 2d 902, 911 (S.D. Ind. 2006) ("The plain and ordinary meaning of the word 'building' does not include a parking lot."). After transmogrifying the building and the parking lot into a "single unit," the majority ruled that the parking lot is a "sensitive place"—just like the building—where, under its reading of *Heller*, the Second Amendment does not apply.[3] *Bonidy*, 790 F.3d at 1125. Thus, under the majority's reasoning, all future

---

[3] The majority's malleable interpretation of "sensitive places" also raises a substantial question meriting Supreme Court review because it could be used to turn all federal lands into "sensitive places," where, under the majority's opinion, the Second Amendment does not apply. *See* Reply Brief for Appellants, *Nesbitt v. Corps of Engineers*, 9th Cir. No. 14-36049, 2015 WL 4937683 at **6–7 (filed Aug.

challenges in this circuit to *Heller*'s "presumptively lawful" restrictions will be summarily denied. *See McCane*, 573 F.3d at 1047–50 (Tymkovich, J., concurring).

Yet, contrary to the majority's opinion, other circuits have recognized that *Heller*'s "presumptively lawful" restrictions do burden conduct protected by the Second Amendment. This is evidenced by the fact that other circuits have entertained as-applied challenges to *Heller*'s "presumptively lawful" restrictions. For example, as to 18 U.S.C. § 922(g)(1), which disarms felons and which *Heller* said is a "presumptively lawful" restriction, the Seventh Circuit explained:

> *Heller* referred to felon disarmament bans only as "presumptively lawful," which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge. Therefore, putting the government through its paces in proving the constitutionality of § 922(g)(1) is only proper.

*U.S. v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *U.S. v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012) (rejecting as-applied challenge to 18 U.S.C. § 922(g)(1)); *U.S. v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (same); *see U.S. v. Vongxay*, 594 F.3d 1111, 1114–18 (9th Cir. 2010) (rejecting facial challenge to 18 U.S.C. § 922(g)(1), but implying felons have Second Amendment rights); *U.S. v. Rozier*, 598 F.3d 768, 770–71 (11th Cir. 2010) (per curiam) (same); *see also Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) ("*Heller II*") ("A

---

12, 2015) (federal government citing the majority's opinion in support of its argument that recreational areas on federal lands "are "sensitive places" where the Second Amendment does not apply); *see also Bonidy*, 790 F.3d at 1140 n.10 (Tymkovich, J., dissenting).

9

plaintiff may rebut [*Heller*'s] presumption by showing the regulation [has] more than a de minimis effect upon his [Second Amendment] right."). In fact, by conceding that *Heller*'s "presumptively lawful" restrictions are subject to as-applied challenges, the United States itself has recognized that the restrictions burden conduct protected by the Second Amendment. *U.S. v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011) ("*As the Government concedes*, *Heller*'s statement regarding the presumptive validity of felon gun dispossession statutes does not foreclose Barton's as-applied challenge. By describing the felon disarmament ban as 'presumptively' lawful …, the Supreme Court implied that the presumption may be rebutted." (emphasis added)).

In short, by ruling that *Heller*'s "presumptively lawful" restrictions do not burden conduct protected by the Second Amendment, the majority created a conflict with a majority of the other circuits. Accordingly, this case presents a substantial constitutional question that merits Supreme Court review. Supreme Court Rule 10(a) (indicating that a split in the circuits on an important issue is a compelling reason for granting certiorari).

This case also presents a substantial constitutional question regarding the level of scrutiny to be applied to infringements on the right to keep and bear arms. According to the Supreme Court, infringements on the right to keep and bear arms are reviewed based on the history and tradition of the right and not by a balancing

test, such as strict or intermediate scrutiny, because the Second Amendment itself "is the very *product* of an interest-balancing by the people ...." *Heller*, 554 U.S. at 634–35 (emphasis in original); *McDonald*, 561 U.S. at 785 (plurality opinion) ("In *Heller* ...we expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing ...."); *see Heller II*, 670 F.3d at 1271 (Kavanaugh, J., dissenting) ("In my view, *Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny.").

This Court, however, applies a two-step test in Second Amendment challenges. *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir. 2010). At step-one, the issue is whether the restriction burdens conduct protected by the Second Amendment. *Id*. at 800. If the restriction burdens conduct protected by the Second Amendment, step-two requires a court to review the restriction under a means-end scrutiny. *Id*. at 801. Because this Court has eschewed *Heller*'s history and tradition test, for a two-step test, *see Reese*, 627 F.3d at 800–01, this case presents a substantial constitutional question meriting Supreme Court review. Supreme Court Rule 10(c) (indicating that certiorari may be granted when a court of appeals has decided an important federal question in a way that conflicts with Supreme Court precedent).

Even if infringements on the right to keep and bear arms are subject to a means-end scrutiny, there is a substantial constitutional question as to what level of scrutiny applies. *See Jackson v. City & Cnty. of San Francisco*, 135 S. Ct. 2799, 2801 (2015) (Thomas, J., dissenting from denial of certiorari.) ("Since our decision in *Heller*, members of the Courts of Appeals have disagreed about whether and to what extent the tiers-of-scrutiny analysis should apply to burdens on Second Amendment rights."). Based upon the majority and dissenting opinions in this case, it appears that this Court may subject all restrictions on the right to keep and bear arms to only intermediate scrutiny. *Bonidy*, 790 F.3d at 1126 ("If Second Amendment rights apply outside the home, we believe they would be measured by the traditional test of intermediate scrutiny."); *id*. at 1132 (Tymkovich, J., dissenting) ("In light of our past cases, I agree with the majority that intermediate scrutiny is the appropriate form of scrutiny for this regulation."); *but see, Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 775 F.3d 308, 322–30 (6th Cir. 2014), *reh'g en banc granted, opinion vacated* (Apr. 21, 2015) (applying strict scrutiny to 18 U.S.C. § 922(g)(4)).

Yet, the Supreme Court generally applies strict scrutiny to a law that infringes upon a fundamental right. *E.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339–40 (2010); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). It is beyond doubt that the

Second Amendment protects a fundamental right. *McDonald*, 561 U.S. at 778 ("[I]t is clear that the Framers … counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty."). These two principles—that strict scrutiny generally applies to laws infringing upon fundamental rights and that the Second Amendment protects a fundamental right—taken together strongly suggest that the panel erred in applying intermediate scrutiny. *See Jackson*, 135 S. Ct. at 2801 (Thomas, J., dissenting from denial of certiorari.) ("[W]hen a law burdens a constitutionally protected right, we have generally required a higher showing than [intermediate scrutiny]."); *Ezell v. City of Chicago*, 651 F.3d 684, 706–09 (7th Cir. 2011) (ruling that a level of scrutiny higher than intermediate scrutiny "if not quite 'strict scrutiny'" should be applied to the city's firing-range ban).

This is especially true considering that, under 39 C.F.R. § 232.1(*l*) and the facts of this case, Bonidy must relinquish his Second Amendment right in order to exercise his First Amendment right to receive communications by mail. *See Blount v. Rizzi*, 400 U.S. 410, 416 (1971) ("The United [States] may give up the Post Office when it sees fit, but while it carries it on the [use] of the mails is almost as much a part of free speech as the right to use our tongues...." (quotation omitted)); *Lamont v. Postmaster Gen.*, 381 U.S. 301, 307 (1965) (requirement that recipient request in writing that "communist political propaganda" be delivered to

him was a violation of the recipient's First Amendment rights.). Because Bonidy must choose between two fundamental rights, strict scrutiny should have been applied. *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972) (applying strict scrutiny to a state law that forced a person to choose between the fundamental right to travel and the fundamental right to vote); *see Shapiro v. Thompson*, 394 U.S. 618, 634 (1969) (A classification that "serves to penalize the exercise of [a fundamental right], unless shown to be necessary to promote a compelling governmental interest, is unconstitutional."). Accordingly, because the proper level of scrutiny to be applied in this case raises a substantial constitutional question, Supreme Court review is warranted. *See Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 210, 223–27, 235–39 (1995) (granting certiorari to determine the proper level of scrutiny to be applied to federal, race-based classifications and ultimately vacating this Court's opinion that had applied intermediate scrutiny).

## II.     THERE IS GOOD CAUSE TO STAY THE MANDATE.

As demonstrated above, this case presents substantial constitutional questions that warrant Supreme Court review. In addition, there is good cause to stay the mandate. If the mandate issues, Bonidy will suffer irreparable harm because he will have to relinquish his Second Amendment right in order to

14

exercise his First Amendment right to receive communications by mail.[4] *See Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (indicating that a stay of the mandate is appropriate if the movant will suffer irreparable harm in the absence of a stay).

It is well established that infringements on fundamental rights constitute irreparable harm. *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("'When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'" (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (2d ed.1995)); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003) ("The Supreme Court has made clear that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion))). This principle applies with equal force to the fundamental right to keep and bear arms. *Ezell*, 651 F.3d at 699 (infringements on Second Amendment rights constitute irreparable harm because they cannot be remedied by monetary damages); *accord Wrenn v. District of Columbia*, No. 1:15-CV-162 (FJS), 2015 WL 3477748, at *9 (D.D.C. 2015) (appeal pending); *see Morris v. U.S. Army*

---

[4] Staying the mandate will also preserve the status quo and not prejudice the USPS because Bonidy has been safely storing his handgun in his truck while he picks up his mail for the last two years in accordance with the District Court's judgment. *See* App. at 925.

15

*Corps of Engineers*, 990 F. Supp. 2d 1082, 1089 (D. Idaho 2014) (ruling that "irreparable harm" for the granting of a preliminary injunction was established "because the plaintiffs have made out a colorable claim that their Second Amendment rights have been threatened"); *see also McDonald*, 561 U.S. at 780 (plurality opinion) (noting that the right to keep and bear arms may not be "treat[ed]" as a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees ….").

Accordingly, there is good cause to stay the mandate so that Bonidy will not suffer irreparable harm pending final disposition of this case by the Supreme Court.

## CONCLUSION

For the foregoing reasons, this Court should stay the mandate pending the filing and disposition of a timely petition for writ of certiorari.

DATED this 14th day of September 2015.

Respectfully submitted,

/s/ Steven J. Lechner
Steven J. Lechner
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
lechner@mountainstateslegal.com

Attorney for Plaintiffs-Appellees/Cross-Appellants

**CERTIFICATE OF VIRUS SCANNING AND PRIVACY REDACTIONS**

In accordance with this Court's CM/ECF User's Manual and its Local Rules, I hereby certify that the foregoing has been scanned for viruses with Trend Micro Antivirus+, updated September 14, 2015, and is free of viruses according to that program. In addition, I certify that all required privacy redactions have been made and the electronic version of this document is an exact copy of the written document to be filed with the Clerk.

DATED this 14th day of September 2015.

/s/ Steven J. Lechner
Steven J. Lechner

# **CERTIFICATE OF COMPLIANCE**

I certify that, pursuant to Fed. R. App. P. 27(d)(1)–(2) and Fed. R. App. P. 32(a)(5)–(6), the foregoing Plaintiffs-Appellees/Cross-Appellants' Motion to Stay the Mandate Pending the Filing and Disposition of a Petition for Writ of Certiorari is proportionately spaced, has a typeface of 14 point font, and does not exceed 20 pages.

DATED this 14th day of September 2015.

/s/ Steven J. Lechner
Steven J. Lechner

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using this Court's CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 14th day of September 2015

/s/ Steven J. Lechner<br>Steven J. Lechner